UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

LINDA REED,

    Plaintiff,

v.

COMMON BOND, LLC,

    Defendant.

Case No. 18-cv-263-pp

---

**ORDER DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTIONS TO APPOINT COUNSEL (DKT. NOS. 17, 31, 33), DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION TO STAY PROCEEDINGS (DKT. NO. 17), DENYING PLAINTIFF'S MOTION FOR SANCTIONS (DKT. NO. 31) AND DENYING PLAINTIFF'S MOTION TO RECEIVE ACCOMMODATIONS (DKT. NO. 33)**

---

## I.    Background Facts

On February 20, 2018, the plaintiff filed a lawsuit against Common Bond, LLC. Dkt. No. 1.[1] The complaint—the document that started the lawsuit—is twenty-seven, single-spaced pages long, and contains 209 paragraphs of allegations and claims. It alleges that the plaintiff has multiple health issues, including an untreatable brain disorder that impacts her speech and her ability to process information, post-traumatic stress disorder, adjustment disorder, "acute anxiety Tourette syndrome," and blackouts. Dkt.

---

[1] Whenever the reader sees a reference to "Dkt. No. ____," that is a reference to a particular document that one of the parties has filed with the court, based on the docket number the clerk's office assigned to the document.

1

No. 1 at ¶23. The complaint says that she "request[s] written accommodations." Id.

The plaintiff paid the $350 filing fee and the $50 administrative fee on the same day she filed the complaint.

The defendant waived formal service of the complaint on February 28, 2018. Dkt. No. 4. A few weeks later, the court received a letter from the plaintiff, discussing her visit to the clerk's office to file the complaint. Dkt. No. 11. The letter reiterated that the plaintiff is disabled, and said, "I would like to advise the court that from time to time I will need accommodations for my disabilities." Id. at 1. The letter says that in the plaintiff's experience, the legal process exacerbates her disabilities.[2] Id.

On April 23, 2018, the defendant filed a motion to dismiss the plaintiff's lawsuit, dkt. no. 13, along with supporting documents, dkt. nos. 14-16. A little over a week later, the court received a motion from the plaintiff, asking the court to appoint a lawyer to represent her. Dkt. No. 17. The motion first explained that the plaintiff had asked the defendant's lawyer to accommodate her disabilities—she asked the lawyer to "send all correspondences to me via email and then a copy sent [United States Postal Service]." Id. She says that the

---

[2] It appears that the plaintiff has experience in the legal system. She has filed two other lawsuits in the Milwaukee federal court—Linda Reed v. Columbia St. Mary's, Case No. 14-cv-145-JPS (E.D. Wis.) and Linda Reed v. Columbia St. Mary's, Case No. 14-cv-330-JPS (E.D. Wis.). Her letter also refers to a temporary restraining order and petition for a permanent injunction that she says the defendant filed against her, and a hearing that took place before a court commissioner in the Milwaukee County Courthouse, so it appears that she has experience in state court litigation. Dkt. No. 11 at 1-2.

defendant's lawyer has not been sending her documents by email, as she asked. She also indicates that the defendant's motion to dismiss was twenty-two pages long, and included "a bunch of papers copied from Westlaw;" she argues that this amount of information was overly burdensome to her, and to her seventh-grade granddaughter who helps her read documents. Id. The plaintiff concluded by "asking that the court appoint [her] an attorney as an accommodation for [her] disabilities," and asking for "additional time/a stay of [the] case until the court can get [her] help with [her] complaint." Id.

About ten days later, the court received another letter from the plaintiff, complaining that the defendant's attorney was not accommodating the plaintiff's disabilities and was not sending her all the information defense counsel was sending the court. Dkt. No. 18. The plaintiff asked that the court either deny the defendant's motion to dismiss "[o]r appoint an attorney for the plaintiff as an accommodation for her disabilities and expand [her] reply time to respon[d] to [the defendant's] motion to dismiss." Id. at 2.

The court did not promptly rule on the plaintiff's requests for a lawyer. Even so, on August 13, 2018, the court received the plaintiff's response to the defendant's motion to dismiss. Dkt. No. 19. At the end of the eighteen-page response, the plaintiff again asked the court to appoint her an attorney as an accommodation for her disabilities. Id. at 18.

On September 6, 2018, the court also received from the plaintiff an extensive objection to a declaration filed by one of the defendant's attorneys. Dkt. No. 24. The defendant has filed a motion to strike that filing. Dkt. No. 27.

This prompted the plaintiff to file another motion asking the court to appoint her a lawyer (as well as asking the court to sanction the defendant's lawyers). Dkt. No. 31. In this motion, the plaintiff says that she asked the defendant's attorneys to send her documentation via email and to communicate with her "via email only." Id. at 1. The plaintiff complains that despite this request, the defendant's lawyers do not send her documents in a timely manner. She also says that it confuses her that she receives documents and communications from different lawyers and employees at the law firm that represents the defendant; she says that this makes her feel threatened and ganged up on. Id.

After the court received this second motion to appoint counsel, it concluded that perhaps it would be easier for the plaintiff if the court scheduled a hearing, so that the court could speak to the plaintiff directly. The plaintiff has told the court several times that her disabilities make it difficult for her to understand things, so the court thought perhaps talking directly with the plaintiff, rather than sending her written documents, might help her understand. The court scheduled a hearing for January 16, 2019. After the court sent out the notice of the hearing, however, the plaintiff called the court's chambers, and spoke with a member of chambers staff, Ms. Biskupic. The plaintiff told Ms. Biskupic that she was concerned about being able to understand what was going on at a hearing. Ms. Biskupic asked whether the plaintiff wanted the court to cancel the hearing; the plaintiff said that she wanted the court to hear her, and to hear her concerns. Ms. Biskupic

suggested that the plaintiff write down her concerns about the hearing, so that the court could better understand.

The plaintiff accepted Ms. Biskupic's suggestion and filed another letter. Dkt. No. 33. She stated that she was "requesting accommodations under the ADA, section 504 and all applicable laws." Id. The plaintiff stated that she had called the court because the notice of the hearing was confusing to her. She wanted to know "whether a hearing and a status conference are the same things." Id. She also said she had called to request accommodation for her disability, stating that "[t]he telephone call triggers the request for accommodations." Id. The plaintiff stated that she was "concerned that a hearing is too much information for [her] to process and that her disabilities will not allow [her] to participate in the hearing." Id. She said that her past experience in court has convinced her that she can't defend herself without time and patience; she says that this is true whether the hearing is in person or over the phone. Id. She finished with the following request:

> I am requesting accommodations for my disabilities as follows: I need consistency in the documents that I receive. For instance, is this a hearing or a status conference it needs to be referred to like the same thing throughout the document. (2) transparency and more details (3) I am requesting an attorney for this hearing and any future hearing or appeals. (4) I am requesting your accommodation ideas.

Id.

Given the concerns the plaintiff expressed, the court canceled the January 16, 2019 hearing. The court notified the plaintiff of the cancellation in two ways: Ms. Biskupic called the plaintiff and informed her that the court was

5

canceling the hearing, and the court issued a written order canceling the hearing (dkt. no. 34), which Ms. Biskupic sent to the plaintiff via email.

II.     **The plaintiff's request for accommodations (Dkt. No. 33)**

In the letter the court received on January 8, 2019, the plaintiff stated that she was requesting accommodations under "the ADA, section 504 and any and all applicable laws." Dkt. No. 33. The court assumes that when she says "ADA," the plaintiff is referring to the Americans with Disabilities Act of 1990, 42 United States Code §12101-12117. The ADA prohibits discrimination against people who have disabilities. (The plaintiff specifically mentioned section 504 of the ADA. Section 504 is part of the Rehabilitation Act of 1973; together with the ADA, it prohibits discrimination against children and adults with disabilities in public schools and other settings.) The plaintiff has asked the court for several accommodations for her disabilities.

First, each time the plaintiff has asked the court to appoint a lawyer to represent her, she has indicated that she wants an appointed lawyer to accommodate her disabilities. "[T]here is no requirement under the ADA that courts provide legal counsel for a person with disabilities." Douris v. New Jersey, 500 Fed. App'x 98, 101 (3rd Cir. 2012). See also, Pinson v. Equifax Credit Information Servs. Inc., 315 F. App'x 744, 749 (10th Cir. 2009) ('To the extent the [plaintiffs] contend the ADA and Rehabilitation Act required the court to appoint counsel on its own volition, we find no support for the proposition.") The court acknowledges that the plaintiff is disabled, but the law

6

does not entitle her to a court-appointed lawyer as an accommodation for those disabilities.

The plaintiff also asked for consistency in the documents that the court sends her. The court does its best to communicate clearly and consistently with *all* the people who have cases in front of it. It will try to communicate clearly with the plaintiff. But while the court cannot discriminate against the plaintiff based on her disabilities, the ADA does not require it to create a special system just for her. As far as the court is aware, the ADA does not require the defendant's lawyers to create a special system just for the plaintiff, either.

As a courtesy to the plaintiff, the court will answer her question about the definition of "hearings" and "status conferences." A "hearing" is an event where the court speaks with the parties to a lawsuit, either in person or by telephone. Any time the court speaks with the parties, it is conducting a "hearing." There are all kinds of hearings. There are "motions" hearings, where the court talks with the parties about motions they have filed (and listens to their arguments about those motions). There are "scheduling" hearings, where the court talks with the parties about dates and times for filing documents or having future hearings. There are "evidentiary" hearings, where the parties present testimony and evidence in court. A trial is a special kind of hearing, where a jury or a judge makes a final decision about who wins the lawsuit.

A "status conference" is a kind of hearing where the court talks with the parties about the status of the lawsuit. Sometimes the court uses a status

conference hearing to ask the parties if they are making progress on exchanging documents. Sometimes it uses a status conference hearing to ask whether the parties are interested in having someone help them try to resolve the case—someone like a mediator (a person who does not decide the case, but who helps the parties talk through their disagreements). Sometimes the court uses a status conference to ask the parties how much time they will need to do something, or to ask whether the parties are ready to schedule a date for a trial. In this situation, the court scheduled a "status conference" hearing for January 16 because it thought that explaining some of the things the court talks about in this order in person might be easier for the plaintiff than having her try to read a written order. It appears that the court was wrong, and so it canceled the status conference hearing.

Finally, the plaintiff asked the court for "transparency and more details." The court will do its best, but given that it has over 460 other civil cases, as well as criminal cases, the court will not always be able to provide as much detail or information as it has provided in this order.

### III. The plaintiff's motions to appoint counsel (Dkt. Nos. 17, 31, 33)

There is a federal law—28 United States Code §1915(e)(1)—that gives a federal judge broad discretion to appoint a lawyer to represent someone in a civil case who is "unable to afford counsel." A person asking the court to appoint a lawyer to represent her first must demonstrate to the court that she is "unable to afford counsel." Most people who can't afford a lawyer also can't afford to pay the case filing fee. They fill out a form, called a "Non-Prisoner

Request to Proceed in District Court Without Prepaying the Filing Fee." That form asks for information about the person's income and expenses and other financial information. The plaintiff in this lawsuit did not fill out that form, because she did not ask to proceed without prepaying the filing fee. She has paid the fee. So the court does not have any information about the plaintiff's financial situation; it does not know whether she is "unable to afford counsel."

Even if the plaintiff demonstrates to the court that she is unable to afford counsel—by, for example, filing an affidavit providing the information that the "Non-Prisoner Request to Proceed in District Court Without Paying the Filing Fee" asks for, the law would not require the court to appoint a lawyer for the plaintiff. Many, many plaintiffs ask the court to appoint a lawyer to represent them. Some of them are in prison. Some of them are in the hospital. Some of them simply don't have enough money to hire a lawyer. The court does not have a pot of money that it can use to pay lawyers to represent people in civil cases. The only way a court can appoint a lawyer to represent someone in a civil case is by asking private lawyers to volunteer, and there are not enough lawyers willing to volunteer to represent everyone who asks for a lawyer. For that reason, the law in federal court in Wisconsin requires that before a court can start looking for a volunteer lawyer for someone, that person first must show the court that she has made a reasonable effort to hire a private lawyer on her own. The case that established this requirement is <u>Pruitt v. Mote</u>, 503 F.3d 657, 653 (7th Cir. 2007). A person can prove that she made a reasonable effort to find a lawyer on her own by providing the court with the names of at

9

least three lawyers whom she contacted, and who either refused to take her case or didn't respond.

Finally, even if a person shows the court that she cannot afford a lawyer, and shows that she has made a reasonable effort to hire a lawyer on her own, the court cannot appoint a lawyer until it has considered one other question: "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it." Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013) (citing Pruitt, 503 F.3d at 655). The court looks, not only at the person's ability to try her case, but also at her ability to perform other "'tasks that normally attend litigation,' such as 'evidence gathering' and 'preparing and responding to motions.'" Id.

The plaintiff has not demonstrated that she is unable to afford counsel. She has not demonstrated that she has made a reasonable effort to find a lawyer on her own. But she *has* demonstrated that right now, she can represent herself. Despite her disabilities, the plaintiff has filed an extremely detailed complaint. She has filed several lengthy, detailed motions. She has filed an extensive response to the defendant's motion to dismiss. She has mentioned statutes (both state laws and federal laws) and court decisions. She has provided lots of facts. She has been able to explain her concerns in a way that the court can understand them.

For these reasons, the court will deny the plaintiff's motions to appoint counsel. The court will deny these motions "without prejudice." That means that if things change in the future—if the plaintiff demonstrates that she is

unable to afford counsel, and if she shows that she has tried to hire a lawyer on her own, and if she demonstrates that the case has reached a point where it is too complicated for her to manage herself, she can ask the court again to appoint a lawyer; she is not prohibited from renewing the request in the future if the situation changes.

The court also notes that it often sets deadlines by which a party or a lawyer must file something. The court understands that such deadlines may be stressful for the plaintiff, but the court must set deadlines to keep cases moving forward. If the plaintiff feels that she cannot meet a particular deadline, she can always file a motion, asking the court to extend the deadline and explaining how much extra time she needs.

### IV.  Other motions

The court already has mentioned that the defendant has filed a motion to dismiss the plaintiff's case, and the plaintiff has responded to it. The plaintiff also filed objections to a declaration filed by one of the defendant's lawyers, and the defendant has asked the court to strike that objection. The court will rule on those motions in a separate order from this one.

### V.  Conclusion

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion to appoint counsel and stay proceedings. Dkt. No. 17.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's second motion to appoint counsel and **DENIES** her motion for sanctions. Dkt. No. 31.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion to

11

appoint counsel for future hearings and **DENIES** the plaintiff's motion for accommodations. Dkt. No. 33.

Dated in Milwaukee, Wisconsin this 17th day of January, 2019.

BY THE COURT:

**HON. PAMELA PEPPER**
**United States District Judge**