LINDA REED,

              Plaintiff,

      v.                                   Case No. 18-cv-263-pp

COMMON BOND, LLC.,

              Defendant.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR AN EXTENSION OF TIME (DKT. NO. 17), GRANTING DEFENDANT'S MOTION TO STRIKE (DKT. NO. 27), GRANTING DEFENDANT'S MOTION TO DISMISS (DKT. NO. 13) AND ALLOWING PLAINTIFF TO FILE AN AMENDED COMPLAINT**

---

The plaintiff, representing herself, filed this complaint against Common Bond, LLC, alleging eight causes of action arising from her tenancy at the Brewery Point Apartments. Dkt. No. 1. CommonBond Housing filed a motion to dismiss on April 23, 2018, arguing that the complaint does not comply with Fed. R. Civ. P. 8(a)(2) and fails to state a claim under Fed. R. Civ. P. 12(b)(6).[1] Dkt. No. 13. Considering the 200+, single-spaced paragraphs in the complaint, the court will grant the defendant's motion to dismiss, but will give the plaintiff the opportunity to file an amended complaint.

---

[1] Among the other difficulties with this case, the court notes that the identity of the defendant is not clear. The plaintiff named "Common Bond, LLC" in the caption of the complaint. Dkt. No. 1 at 1. She refers to "Common Bond Communities" in the body of the complaint. The party filing the motion to dismiss is CommonBond Housing. Dkt. Nos. 3, 14. Perhaps all these entities are the same, or one owns another. The court has no way of knowing.

## I. PROCEDURAL BACKGROUND

The plaintiff filed her complaint on February 20, 2018 and paid the $400 filing fee. Dkt No. 1. Ten days after the defendant filed its motion to dismiss, dkt. no. 13, the court received a letter from the plaintiff, dkt. no. 17. She informed the court that her granddaughter had been helping her respond to the defendant's motion to dismiss because she (the plaintiff) has an untreatable brain disorder. Id. She wrote that responding to the defendant's motion was "overly burdensome for [her] and [her] granddaughter" and asked for additional time to respond to the motion, "until the court can get me help with my complaint." Id. She also asked the court to appoint her an attorney. Id. Eleven days later, the court received another letter from the plaintiff. Dkt. No. 18. This letter explained that the plaintiff's disabilities included "acute anxiety, TD, Tourette syndrome, bipolar syndrome, and adjustment disorder." Id. At the end of the letter, the plaintiff again asked for additional time to respond to the motion to dismiss. Id. The court addressed the plaintiff's motions to appoint counsel in its January 17, 2019 order, dkt. no. 35, but the plaintiff's request for an extension of time remains pending.

The plaintiff filed her opposition brief to the motion to dismiss on August 13, 2018, three months after it was due. Dkt. No. 19. The defendant filed its reply two weeks later. Dkt. No. 22. About ten days after the defendant's reply, the plaintiff filed an "objection" to defense counsel's affidavit in support of the motion to dismiss. Dkt. No. 24. The defendant filed a motion to strike this objection, dkt. no. 27; that motion also remains pending.

As the court said it would in its January 17, 2019 order denying the plaintiff's requests for accommodation, the court set a status conference to address these motions. Before that conference could occur, the plaintiff called

chambers staff to inform the court of the difficulties that she would have at the hearing. Chambers staff asked the plaintiff to write the court a letter about her concerns, and she did. Dkt. No. 33. On January 15, 2019, the court canceled the status conference. Dkt. No 34. Two days later, the court issued an order addressing the plaintiff's three requests for appointment of counsel. Dkt. No. 35. That order told the plaintiff that the court was aware of the remaining outstanding motions and would be issuing a written order on those motions. Id. at 11. This is that order.

## II.  Plaintiff's Motion for An Extension of Time (Dkt. No. 17)

The defendant filed its motion to dismiss on April 23, 2018. Dkt. No. 13. Civil Local Rule 7(b) of the Local Rules for the Eastern District of Wisconsin gave the defendant twenty-one days to respond to the defendant's motion—until May 13, 2018. Although the court received the plaintiff's letter request for an extension before the May 13, 2018 deadline, dkt. no. 17, the plaintiff did not file her response until three months after the due date, on August 13, 2018, dkt. no. 19.

Federal Rule of Civil Procedure 6(b) says that "when an act may or must be done within a specified time"—such as filing a response brief within twenty-one days—"the court may, for good cause, extend the time: (A) with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires[.]"  The plaintiff made her request for an extension of time on May 3, ten days before the response deadline expired. Rule 6(b) allows the court to grant the plaintiff's request if it finds that the plaintiff has shown "good cause."

The plaintiff has made the court aware of her disabilities, which include an untreatable brain disorder, acute anxiety, Tardive Dyskenia, Tourette

Syndrome, bipolar disorder and adjustment disorder. She has told the court that she needed assistance from her granddaughter to read and understand the motion to dismiss. The additional ninety days that it took for the plaintiff to file her response brief is less than the almost seven months it has taken this court to rule on the motion. The court finds that the plaintiff has shown good cause and the court will, belatedly, grant the plaintiff's request for an extension of time. The court deems the plaintiff's August 13, 2018 response brief timely filed, and will consider it in ruling on the motion to dismiss.

**III.    Defendant's Motion to Strike Plaintiff's Objection (Dkt. No. 27)**

    A.    <u>The Plaintiff's September 6 "Objection" (Dkt. No. 24).</u>

    The plaintiff titled her September 6, 2018 objection "PLAINTIFF'S WRITTEN OBJECTION TO ADMISSIBILITY OF ATTORNEY LAUREL J. PUGH DECLARATION IN SUPPORT OF DEFENDANT MOTION TO DISMISS. REQUEST FOR PROCEDURAL DETERMINATION BY TRIAL COURT WITH FINDINGS OF FACTS AND CONCLUSIONS OF LAW AND FOR LIMITING INSTRUCTION." Dkt. No. 24. In the second paragraph, the document cites the Wisconsin Rules of Evidence and argues that Attorney Pugh's declaration is not relevant. <u>Id.</u> The beginning of page two appears to be the text of subsections (3), (5) and (6) of Wis. Stat. §802.08, the Wisconsin rule governing summary judgment motions. <u>Id.</u> The remainder of page two continues the plaintiff's argument that the affidavit of Attorney Pugh is not relevant. Page three attacks the Pugh Affidavit for "lack of personal knowledge," citing Wis. Stat. §906.02 (the Wisconsin rule of evidence that requires that a witness must have personal knowledge of the things about which the witness testifies) and Wis. Stat. §802.08, the Wisconsin summary judgment rule. <u>Id.</u> at 3. The remainder of the six-page document argues that the plaintiff is entitled to summary judgment,

citing Wisconsin statutes and decisions from Wisconsin courts. Id. at 4-5. At the end of the document, the plaintiff asks the court to "properly confine and limit its consideration of such evidence to the purpose of qualified witness authentic of the documents, and genuine facts in a declaration." Id. at 6.

B.     Defendant's Motion to Strike (Dkt. No. 27)

The defendant's motion to strike characterizes the plaintiff's September 6 pleading as an impermissible sur-reply. Dkt. No. 28. It reminds the court that the local rules do not allow sur-replies as a matter of right and that courts in this district routinely disallow sur-reply briefs. Dkt. No. 28 at 2 (citing Civil Local Rule 7(i); Boustead v. Baranick, 151 F.R.D. 102, 106 (E.D. Wis. 1993); Nalco Chem. Co. v. Hydro Tech., Inc., 809 F. Supp. 672 (E.D. Wis. 1992)). With regard to the plaintiff's request that the court grant summary judgment in her favor, the defendant argues that the fact that it attached a document to defense counsel's affidavit in support of the motion to dismiss does not require the court to convert the motion into a summary judgment motion, because the document it attached was repeatedly referenced in the complaint, and was incorporated by reference.[2] Id. at 4.

---

[2]The defendant attached to Attorney Pugh's affidavit in support of the motion to dismiss a copy of a June 14, 2017 letter the U.S. Department of Housing and Urban Development sent to the defendant notifying it that HUD had concluded that the defendant had not discriminated against the plaintiff, along with HUD's June 14, 2017 determination of no reasonable cause. Dkt. No. 15 at 2-9. Normally, motions to dismiss under Rule 12(b)(6) must "be converted into motions for summary judgment" if they contain "materials outside of the pleadings." Browmark Films, LLC v. Comedy Partners, 682 F.3d 687, 690 (7th Cir. 2012). The exception to this rule is the incorporation-by-reference doctrine, which says that "if a plaintiff mentions a document in [her] complaint, the defendant may then submit the document to the court without converting the defendant's 12(b)(6) motion to a motion for summary judgment." Id. In the very first sentence of her complaint, the plaintiff discusses the "no reasonable cause order." Dkt. No. 1 at 1. Under the incorporation-by-reference doctrine, the fact that the defendant attached to Attorney Pugh's affidavit the very HUD

C.    <u>Analysis</u>

The court will grant the defendant's motion to strike the plaintiff's September 6, 2018 pleading for several reasons.

First, the defendant is correct that the September 6, 2018 "objection" is really a sur-reply—a reply to the defendant's reply. The Local Rules for the Eastern District of Wisconsin provide for three pleadings in motion practice—(1) the motion, (2) a response in opposition to the motion, and (3) a reply in support of the motion. Civil L.R. 7(a), 7(b) and 7(c) (available at: https://www.wied.uscourts.gov/local-rules-and-orders). If a party wants to file any other pleading, she must file a motion asking the court for permission to file the pleading and must attach the proposed pleading to that motion. Civil L.R. 7(i). <u>Id.</u> The plaintiff did not ask the court's permission to file a sur-reply; even if she had, it is unlikely the court would have given that permission. <u>See Groshek v. Time Warner Cable, Inc.</u>, No. 15-C-157, 2016 WL 4203506, at *4 (E.D. Wis. Aug. 9, 2016) ("The court grants such leave only rarely; the local rules provide for a motion, a response, and a reply, and in the vast majority of cases, this is sufficient.").

Second, it appears that the plaintiff took a legal document from a different case, copied parts of that document into the September 6, 2018 pleading and then modified the language to fit this case. For example, at the bottom of page 2 and the top of page 3, the document states that

> [i]ntroduction of frame-up evidence also presented the danger of confusing the jury's consideration of other evidence with a higher probative value. We believe these factors would have substantially outweighed the slight probative value of the frame-up evidence and that they evidence would have been excluded under Wis. Stat.

document to which the plaintiff refers does not require the court to convert the motion to dismiss into a summary judgment motion.

§904.03. Thus, we hold that the circuit court did not erroneously exercise its discretion when it excluded the frame-up evidence.

Dkt. No. 24 at 2-3.

There has been no jury in this case. There is no circuit court in this case. No court has yet exercised its discretion to exclude any evidence. It is not clear who the "we" referenced in the quote is, but it appears to have been a court—likely a state court of appeals.

The court understands that for a non-lawyer, and for someone suffering from medical issues, figuring out how to litigate a federal case is difficult. But it is not appropriate to cut and paste sections from other court orders into motions the plaintiff presents to this court. As this court has cautioned a self-represented litigant in another case,

> even a [plaintiff] who is representing himself must make his own arguments. He cannot simply dump documents from other cases (cases that involve different facts, and are in different procedural postures) in this court's lap and say "I would like the same thing." It is not this court's responsibility to dig through the record of a different case to figure out the point that the [plaintiff] wants to make. If the [plaintiff] wants to argue that his case is like another one, he needs to provide a written explanation as to *why* the court should adopt the reasoning from a different case in his case.

Popsockets, LLC v. Hueffner, No. 17-cv-827-pp, 2018 WL 4568823, at *17 (E.D. Wis. Sept. 24, 2018).

Third, the September 6, 2018 document cites only *Wisconsin* laws and decisions from *Wisconsin* cases. The plaintiff has filed this lawsuit in *federal* court—the United States District Court for the Eastern District of Wisconsin. The *federal* court has its own laws, its own rules and its own cases. In *federal* court, litigation is governed by the Federal Rules of Civil Procedure and the Federal Rules of Evidence, not the Wisconsin statutes. The cases that are binding on this court are decisions from the United States Supreme Court and

7

the federal Seventh Circuit Court of Appeals. The only time that a *federal* court relies on *state* statutes and *state* case law is when it is sitting in diversity, considering a substantive issue of state law.

For reasons the court will explain below, it is not clear what the plaintiff is claiming in this federal lawsuit. But on her civil cover sheet, she marked the box that said that the basis for this court's jurisdiction was "Federal Question"—in other words, that she was suing for a violation of *federal* law or the *federal* Constitution. Dkt. No. 1-1. In her complaint, she mentions the Fair Housing Act (a federal statute) and several federal regulations. Dkt. No. 1. She also says that "[u]nder 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case." Id. at 2. It appears, as best the court can tell, that the plaintiff is arguing that the defendant violated federal law. That being the case, *Wisconsin* rules and decisions do not govern this litigation.

Finally, the plaintiff's references to "summary judgment" misunderstand the procedural status of the case. Right now, there is one motion before the court—the defendant's motion asking the court to dismiss the plaintiff's February 20, 2018 complaint. Dkt. No. 13. A motion to dismiss a complaint asks the court to look at the information in that complaint, and determine whether it complies with the Federal Rules of Civil Procedure and whether it states a claim for which a federal court may grant relief. When considering a motion to dismiss, the court does not decide whether the plaintiff has proven her case with admissible evidence; at the motion to dismiss stage, there *is* no evidence before the court. At the motion to dismiss stage, there is nothing before the court except the allegations in the complaint.

Summary judgment is a procedure that parties may use *after* the defendant has filed an answer to the complaint, and *after* the parties have exchanged information (called "discovery"). Once the parties have collected all the information relevant to the allegations in the complaint, a party—usually the defendant—may file a motion under Fed. R. Civ. P. 56, asserting that there are no facts in dispute and that, based on the undisputed facts, that party is entitled to judgment under the law. A party opposing a motion for summary judgment must present evidence to show that relevant facts are in dispute, and must present legal arguments to show that the moving party is not entitled to judgment.

The defendant has *not* filed a motion for summary judgment. The plaintiff has *not* filed a motion for summary judgment. It is too early in the case for either party to file a motion for summary judgment, because the court has not even ruled on the defendant's motion to dismiss the indictment.

The court will grant the defendant's motion to strike the September 6, 2018 document, dkt. no. 27, and will strike the document at dkt. no. 24. The court will not strike the declaration of Attorney Pugh in support of the motion to dismiss.

**IV.    Defendant's Motion to Dismiss (Dkt. No. 13)**

      A.    <u>The Complaint</u>

The complaint consists of twenty-eight, single-spaced pages containing 209 paragraphs of allegations. Dkt. No. 1. It names a single defendant, "Common Bond, LLC." Dkt. No. 1. The first five paragraphs indicate that the plaintiff filed a case with the U.S. Department of Housing and Urban Development, that HUD issued a "no reasonable cause order" in June 2017 after something called Common Bond Communities (CBC) filed an eviction

action against the plaintiff in state court, that the plaintiff litigated the eviction in state court, and that she believes that HUD was barred from issuing its order and she believes the order is void. Id. at ¶¶1-5. The complaint does not name HUD as a defendant and does not refer to the HUD investigation in the "causes of action" section at pages 21 through 27 of the complaint.

The complaint contains a "Jurisdiction and Venue" section—over two pages' worth—which lists a variety of federal statutes and regulations. Id. at ¶¶9-21. It mentions Title VIII of the Civil Rights Act, section 504 of the Rehabilitation Act of 1973, the Fair Housing Act, HUD regulations, 42 U.S.C. §3604, "Section 818" (presumably of the Fair Housing Act), the National Affordable Housing Act, and the Older American Act. Id. The focus of this section of the complaint appears to be the Fair Housing Act, 42 U.S.C. §3601, *et seq.* (FHA); the complaint asserts that the entity called CBC is a recipient of HUD funds, and thus was "obligated to affirmatively further fair housing" under the Fair Housing Act. Id. at ¶10. Paragraph 22 appears to hint at the harm the plaintiff is alleging she suffered:

> [the plaintiff] has been harmed by Defendants' [sic] discrimination against her in the terms, conditions, and privileges of housing rental; discrimination against her in the provision of housing related services and facilities; creation of a hostile housing environment; threats, intimidation and interference with her enjoyment of a dwelling; and retaliation against her for complaining about the discrimination she has experienced, all because Reed filed a complaint to HUD for the violations of her ADA rights and the rights of other tenants.

Id. at ¶22.

The complaint states that the plaintiff is disabled. She has

> an untreatable brain disorder. Her speech is slurred and can be difficult to understand and misinterpreted; under stress [the plaintiff] can not speak at all. She has problems processing oral information while under stress. [The plaintiff] has a physical

> disability, she has constant involuntary body movements in her face eyes, mouth extremities including but not limited to her hands and feet. She is easily frightened when surprised and shocked. Reed has mental disabilities, PTSD; adjustment disorder; acute anxiety Tourette syndrome; blackouts; difficult concentrating and dealing with large amounts of information which exacerbated by stress; brain damage; Tourette syndrome.

Id. at ¶23. The plaintiff also alleges that she is female, id. at ¶24, and that she was, at the time she filed the complaint, sixty-five years old, id. at ¶22.

The complaint asserts that in April of 2015, the plaintiff interviewed with Yolanda Salaam—an employee of CBC—and explained to Salaam her mental and physical disabilities. Id. at ¶44. About two months later, on June 16, 2015, the plaintiff signed a year-long lease with "CBC/brewery Point apartment," id. at ¶22; she says earlier in the complaint that she lived at the Brewery Point Apartments at 1244 North 12th Street in Milwaukee, id. at ¶24. The plaintiff moved "out of CBC August 28, 2017." Id. at ¶47. The complaint asserts that "[a]lmost immediately pettiness, gossiping turn into to serious unrelenting harassment stalking, and false accusations started against [her], from other residents stole donated items she placed in the community room for all of the tenants to use in the building to not talking to tenants to more serious allegations against [her] included but not limited to banishing a knife in the common areas of the building, tenants stalking [her], filing false allegations to expedite [her] evidence from the building interfering with [her] enjoyment." Id. at ¶49.

Most of the complaint describes various interactions that the plaintiff had with other tenants: that fellow tenant Michael Proffitt made sexually suggestive gestures at the plaintiff and mocked her disabilities, id. at ¶¶55-56; that Michael Proffitt stared at her through a salon window, id. at ¶67; that Michael Proffitt turned up the volume on the television in the community room

to disrupt the plaintiff, id. at ¶72; that Michael Proffitt stalked the plaintiff, id. at ¶76; that Michael Proffitt looked at pornography in the computer lab, id. at ¶80; that tenant "Andre" filed a false complaint with management that the plaintiff "b[r]an[d]ished a knife in the elevator or about the elevator," id. at ¶84; that tenant "Catherine Cox-Bell" filed a false complaint against the plaintiff, refused to speak to the plaintiff, and called the plaintiff "this crazy lady," id. at ¶¶96, 105. For most (if not all) of these incidents, the plaintiff alleges that she reported the offending tenant's conduct to management, but that management failed to investigate her allegations. See, e.g., id. at ¶¶76, 79. She alleges that CBC and "Andre" discriminated against her, subjected her to harassment, and "retained the false allegations [in] her tenant record and attempted to compile enough tenant violation[s] against her to use them to evict [the plaintiff.]" Id. at ¶86.

The complaint also makes several allegations against CBC or employees of CBC employees. She asserts that Yolanda Salaam was property manager, id. at ¶29, Greg Lamas was regional manager, id. at ¶33, Vanessa Giraldez was Services Coordinator, id. at ¶41, and John Donelson was a maintenance technician, id. at ¶42. Apart from the accusations that CBC failed to investigate her complaints and to stop the harassment, the plaintiff alleged that a maintenance employee—Donelson, whom she asserts is a Jehovah's Witness, id. at ¶113—entered the plaintiff's apartment without her consent, leaving a humiliating note that questioned her cleanliness, id. at ¶51; that CBC did not replace her washer for several months after she complained, violating the policy that repairs be made within seventy-two hours, id. at ¶114; that the Residents Association of CBC would not allow her to voluntarily clean the apartment's

common spaces because of insurance issues, id. at ¶118; and that CBC failed to fumigate more than a week after a dead body was discovered, id. at ¶141.

The plaintiff states that she filed a HUD complaint in January of 2016. Id. at ¶142. That same month, she alleged that she emailed Salaam, Lamas and Giraldez to tell them that she was being treated unfairly based on her disabilities and that she had filed a complaint with HUD. Id. at ¶147. She alleges that on April 7, 2016, she received a notice that CBC was not going to renew her lease. Id. at ¶34. The plaintiff alleges that she suffered "severe and pervasive harassment because she exercised her right to be let [sic] alone and she filed a complaint with HUD." Id. at ¶126. She also alleges that she would not have been subjected to this hostile housing environment "if she had chosen to submit[] to Proffitt['s] sexual advancements" or if she "had spoken to Cox-Bell and if [she] was a Jehovah's Witness." Id. She asserts that CBC could have done

> simple things such as closing the door to the community room so that other tenants could move around the lobby to get their mail, go to the elevator without being subjected to harassment; gossip; threats; glares; etc., at the hands of CBC tenants. CBC could have order that the table in which the tenants sat every morning be moved to the other side of the room. The table sat in front of an exit door, fire safety issue. CBC failed.

Id. at ¶151.

Although the complaint does not specify when eviction proceedings began,[3] the plaintiff alleges that on September 15, 2016, she went to eviction court. Id. at ¶35. She said that the judge "dismissed CBC eviction against [her]." Id. The plaintiff continued living at the Brewery Point Apartments until she moved out on August 28, 2017. Id. at ¶47.

---

[3] The plaintiff calls it a "five month process eviction." Id. at ¶155.

The complaint concludes with the "causes of action" section, which spans paragraphs 169 to 209. She uses the following titles for her eight causes of action: (1) Violation of the Fair Housing Act; (2) Discrimination §1981-1983; (3) Harassment; (4) Failure To Take All Reasonable Steps to Prevent Harassment; (5) Retaliation; (6) Civil Conspiracy; (7) Hostile Environment; and (8) Intentional Infliction of Emotional Distress.

B.     Defendant's Arguments in Support of Dismissal

The defendant first asks the court to dismiss the complaint under Fed. R. Civ. P. 8(a)(2). Dkt. No. 14 at 4. The defendant notes the length of the complaint. Id. It states that the complaint is "incoherent," which creates challenges for the defendant to respond to it in a meaningful way. Id.

Next, the defendant argues that if the court does not dismiss the complaint for violating Rule 8(a)(2), it should dismiss the complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which a federal court can grant relief. Id. at 6. First, the defendant argues that a plaintiff cannot sue under 42 U.S.C. §3604 for acts of discrimination by other tenants. Id. at 10. The defendant also argues that if, by complaining about the actions of other tenants, the plaintiff is trying to allege constructive eviction, that claim must fail, because she did not abandon the apartment, or argue that she was unable to occupy the apartment. Id. at 10.

Second, the defendant notes that it can't tell from the plaintiff's complaint whether she believes she was discriminated against because of her disability, or because of her gender, or because of her age, or because of her religion; she seems to mention all those factors in the complaint. Id. at 11. The defendant asserts that, to the extent the plaintiff is arguing age discrimination under the Fair Housing Act, the court must dismiss that claim because age is

not a protected class under the FHA. Id. To the extent that the plaintiff is alleging discrimination based on religion, the defendant notes that the plaintiff does not identify her religion, or explain how the conduct of the other tenants relates to religion. Id. To the extent that the plaintiff is claiming that she was discriminated against based on her disabilities or gender, the defendant argues that she has not identified any situations where she was treated differently than tenants who were not disabled, or differently than male tenants. Id. at 11-12. The defendant also argues that if the plaintiff is trying to assert a retaliation claim, she has not alleged a protected activity, shown how the defendant threatened or interfered with that protected activity or demonstrated that the defendant was motivated by discriminatory intent. Id. at 12.

Third, to the extent that the complaint appears to allege a claim for violation of her civil rights under 42 U.S.C. §§1981 and 1983, the defendant points out that it is not a state actor, and that the plaintiff does not identify any constitutional violations (such as an Equal Protection violation). Id. at 13-14.

Fourth, the defendant argues that to the extent the plaintiff is trying to assert a claim that the defendant created a hostile housing environment, her complaint does not allege the elements of such a claim—she does not identify the protected class to which she claims to be a member, and does not demonstrate that any harassment she suffered was linked to terms, conditions or privileges of her apartment rental. Id. at 15. The defendant tries to figure out how the specific statements the plaintiff made as to particular tenants or CBC employees might fit into a hostile living environment claim, and argues that they do not. Id. at 15-18.

Fifth, the defendant asserts that Counts IV ("Failure to Take All Reasonable Steps to Prevent Harassment"), V ("Retaliation"), and VII ("Hostile Environment") are duplicative of the allegations in Counts I ("Violation of the Fair Housing Act") and III ("Harassment"). Id. at 18, 20.

Sixth, the defendant argues that the court must dismiss Count VI ("Civil Conspiracy") because the plaintiff has not (a) identified any "wrongful acts" performed under the alleged conspiracy; (b) alleged any damages she suffered as a result of the alleged acts of the conspiracy; and (c) identified the alleged tort that is the object of the alleged conspiracy. Id. at 19-20.

Finally, the defendant asks the court to dismiss the plaintiff's intentional infliction of emotional distress claim (Count VIII) because the plaintiff has not identified acts performed by the defendant with the intent to cause emotional distress and has not alleged any acts that a reasonable person would find to constitute the complete denial of the plaintiff's dignity as a person. Id. at 21-22.

C.    The Plaintiff's Opposition to Dismissal

The plaintiff characterizes the motion to dismiss as a premature, pre-discovery motion for summary judgment, and the plaintiff asks the court to deny such a motion until she can take discovery. Dkt. No. 19 at 2. She devotes her entire opposition brief to arguments that the court should allow her to take discovery, and concludes by saying that "[a]ny decision by this court prohibiting discovery would prejudice" her. Id. at 17. She also says that if the court dismisses the case, she will appeal. Id. She asks for a continuance to conduct discovery, the appointment of counsel, a "protective order to be held in abeyance pending a ruling on the parties motion to dismiss," and a denial of the defendant's motion. Id. at 18.

D.    The Defendant's Reply

The defendant replied that the court should strike the plaintiff's response because it was "extraordinarily late." Dkt. No. 22 at 2.  It also clarified that it had filed a motion to dismiss under Rule 12(b)(6), not a motion for summary judgment, and that the fact that it had attached the HUD decision to defense counsel's affidavit did not turn the motion into a summary judgment motion. Id. at 7-8.

E.    Analysis

1.    Fed. R. Civ. P. 8(a)(2)

On its web site, this court provides a guide for people who are filing complaints without a lawyer. https://www.wied.uscourts.gov/forms-pro-se-litigants. The guide advises plaintiffs that the most important part of the complaint is the statement of the plaintiff's claim, and it instructs plaintiffs to "[d]escribe *briefly* the exact problem" they are complaining about, focusing on the who-what-when-where-why of their claims. The guide advises plaintiffs to "[t]ell the story as if you are telling it to someone who knows nothing about what happened to you, but put only the important facts in your statement of the claim." It explains that a "short and plain statement helps the judge to review your complaint quickly and move on to the next step of your case," while a long complaint "will take a judge longer to review and understand, and the judge may tell you to rewrite it."

Rule 8(a)(2) requires a complaint to contain "a short and plain statement showing the pleader is entitled to relief[.]" The statement must give fair notice of each of the plaintiff's claims and the grounds on which those claims rest. Rowlands v. United Parcel Service—Fort Wayne, 901 F.3d 792, 800 (7th Cir. 2018). "Though length alone is generally insufficient to justify rejecting a

complaint, unintelligibility is certainly a legitimate reason for doing so." Stanard v. Nygren, 658 F.3d 792, 798 (7th Cir. 2011). "[T]he issue is notice; where the lack of organization and basic coherence renders a complaint too confusing to determine the facts that constitute the alleged wrongful conduct, dismissal is the appropriate remedy." Id.

The plaintiff's complaint does not comply with Rule 8(a)(2). It is not a "short and plain statement showing the pleading is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). The plaintiff states many facts, but does not put them in chronological order, she often repeats the same facts, and scatters in citations to statutes and cases. As the defendant has alleged, many of the "allegations" are simply unsupported legal conclusions, such as "Catherine Cox Bell a tenant at BPA has subjected, and continued to subject, female tenant Linda Reed a participant in the Section 42 program to deprive her of safe, decent, housing discrimination, including severe, pervasive, and harassment, on multiple occasions." Dkt. No. 1 at ¶96. The plaintiff named Common Bond, LLC as the defendant who harmed her, but most of the factual allegations in her complaint relate to HUD, or tenants at the apartment building, or employees of Common Bond Communities; nowhere in the complaint does she explain what *Common Bond, LLC*—the defendant she has sued—did to her. She says that she was discriminated against because of her disabilities, but does not explain how, for example, the fact that the resident association refused to allow her to clean the common area relates to her disabilities, or how her allegation that Michael Profitt stared at her relates to her disabilities. The plaintiff says that she emailed "CBC" about her concerns, and that she gave Salaam, Lamas and Giraldez information about what had happened to her. She does not say when

she did so, or how. She simply alleges that CBC "knew or should have known" that she was being harassed.

A lot of the plaintiff's complaint is taken up with citations to statutes and regulations, and explanations about what certain laws say and what they are meant to do. Neither the court nor the defendant need any of this information, and the court's guide for people filing without a lawyer specifically advises plaintiffs *not* to "include lengthy quotations from statutes, laws, regulations, or cases." At most, all a plaintiff needs to do is to list the statute that she believes the defendant violated. She puts the words "upon information and belief" in front of many of her allegations; the complaint needs to contain allegations based on the plaintiff's *personal knowledge*, not based on information she got from someone else or information she believes may possibly be true.

The plaintiff also appears to have included unrelated claims in the same complaint. She alleges that she was harassed because she exercised her right to be let alone and because she filed a complaint with HUD. She says that she was subjected to a hostile housing environment because she did not submit to Proffitt's sexual advances. She says that she was discriminated against because she is disabled. She says some of the things she has alleged would not have happened had she spoken to one tenant, or if she had practiced a certain religion. She says CBC owed her a duty to ensure that she had equal housing, free from discrimination based on sex.

All these issues cause both the defendant and the court to have to try to figure out what the plaintiff really is getting at—who she believes harmed her, when they did it, and why.

2.      Fed. R. Civ. P. 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to ask a court to the dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A plaintiff must include "enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through [her] allegations, show that it is plausible, rather than merely speculative, that [she] is entitled to relief." Tamayo v. Blagojevich, 526 F.3d 1074, 1083 (7th Cir. 2008) (quoting Lang v. TCF Nat'l Bank, 249 F. App'x 464, 466 (7th Cir. 2007)). A plaintiff must allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Iqbal, 556 U.S. at 678 (quotations omitted). In considering a Rule 12(b)(6) motion, "courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." Silha v. ACT, Inc., 807 F.3d 169, 173 (7th Cir. 2015) (quotation omitted). Because the plaintiff is representing herself, the court must liberally construe the allegations of her complaint. Erikson v. Pardus, 551 U.S. 89, 94 (2007).

The court has found that the complaint violates Rule 8, because it does not contain a short, clear statement of the plaintiff's claims. That does not mean, however, that she *can't* state a valid, short, clear clam.

The Fair Housing Act makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services in connection therewith, because of race, color,

religion, sex, familial status, or national origin." 42 U.S.C. §3604(b). Section 3604(f) targets disability discrimination, making it unlawful to "discriminate in the sale or rental , or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap" and to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap[.]" 42 U.S.C. §§3604(f)(1) and (2). A different provision of the act states that "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of . . . any right granted or protected by section 3603, 3604, 3605, or 3606 of this title." 42 U.S.C. §3617.

While some parts of the complaint are confusing and unclear, there is no question that the plaintiff has alleged that she suffers from several disabilities. She has made it clear that she feels other tenants in the apartment building harassed her. She has made it clear that she believes the defendant is responsible for this harassment. It is possible that the plaintiff can file an amended complaint, stating facts that support her belief that the defendant was aware of the harassment, that the harassment was based on her membership in a protected class and that the defendant knew about it.

To be clear—it is not enough for the plaintiff to file an amended complaint that says, "People in my building harassed me, and it was because I am disabled, and the defendant knew about it and didn't do anything." She must state facts that support these conclusions. She must state facts that link her allegations to the defendant that she has sued—clearly, simply.

The court will give the plaintiff the opportunity to file an amended complaint. That amended complaint will take the place of the original complaint—it should not refer back to the complaint she filed in February of

last year. The court is including with this order the guide for plaintiffs representing themselves, as well as a blank complaint form. The plaintiff must use this form to draft her amended complaint. She must put the word "Amended" in front of the word "Complaint" at the top of the first page, and must put the case number for this case—18-cv-263—in the field for the case number. On the first page, she must list the names of the defendants she is suing; in the body of the complaint, she must state facts that show that those defendants—not other people—took actions that harmed her. She must state only related claims against related defendants—if she chooses to sue CommonBond, she must state only those facts that show how CommonBond harmed her. If the form complaint does not give the plaintiff enough room to state the necessary facts, she may use up to five (5), *double-spaced* additional pages to state the facts.

The court will give the plaintiff a deadline by which to file the amended complaint. If the court does not receive the amended complaint by the deadline the court provides, the court may dismiss the case for failure to state a claim. The court also advises the plaintiff that it is giving her a significant amount of time to file her amended complaint, because it realizes that she needs assistance in doing so. That means that the court will not extend the deadline that it has set in this order.

## V.    CONCLUSION

The court **GRANTS** the plaintiff's motion for an extension of time to respond to the defendant's motion to dismiss. Dkt. No. 17.

The court **ORDERS** that the plaintiff's August 13, 2018 response is deemed timely filed.

The court **GRANTS** the defendant's motion to strike. Dkt. No. 27.

The court **ORDERS** that the clerk's office shall **STRIKE** the document at Dkt. No. 24; the court has not considered that document in ruling on the motion to dismiss.

The court **ORDERS** that the defendant's motion to dismiss is **GRANTED**. Dkt. No. 13.

The court **ORDERS** that by the end of the day on **Friday, May 3, 2019**, the plaintiff shall file an amended complaint that complies with the instructions in this order. If the court does not receive an amended complaint by the end of the day on Friday, May 3, 2019, the court may dismiss the plaintiff's case for failure to state a claim.

Dated in Milwaukee, Wisconsin this 11th day of March, 2019.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**United States District Judge**